## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYEISHA B.,[1] | : | |
| *Plaintiff,* | : | CIVIL ACTION |
| v. | : | No. 24-6384 |
| | : | |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| *Defendant.* | : | |

### MEMORANDUM

**HON. JOSÉ RAÚL ARTEAGA**                                    December 12, 2025
**United States Magistrate Judge[2]**

The Commissioner of Social Security, through an Administrative Law Judge ("ALJ"), determined that Plaintiff Tyeisha B. was not disabled and denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Tr. 22, 65.) Tyeisha B. seeks reversal and remand, arguing that the ALJ's decision was not based on substantial evidence because he failed to properly (1) consider evidence of her neuropathy or (2) assess if her fibromyalgia and other impairments

---

[1] Tyeisha B. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Dec. 8, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 5.)

medically equaled a listed impairment.[3] (*See* ECF 9 at 8-18.) The Commissioner responds that the ALJ reasonably evaluated the overall record and that Tyeisha B. provides no basis for disturbing the ALJ's determination. (*See* ECF 10 at 5-14.)

After careful review of the complete record, Tyeisha B.'s request for review is **DENIED** and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Tyeisha B. applied for Disability Insurance Benefits on April 28, 2022, alleging disability beginning on March 11, 2022. (Tr. 65.) Her application was denied initially and on reconsideration. (Tr. 65, 77.) Tyeisha B. requested an in-person hearing, which the ALJ held on January 9, 2024. (Tr. 45-64, 106, 180.) The ALJ heard testimony from a vocational expert ("VE") and Tyeisha B., who was represented by counsel. (Tr. 50-64.) Tyeisha B. testified that she had resumed working in October 2023. (Tr. 51-52.) The ALJ determined that Tyeisha B. was not disabled during the relevant period and denied her application on April 4, 2024. (Tr. 22-46.)

According to the ALJ, Tyeisha B. met the Social Security Act's insured status requirements through December 31, 2028, and had not engaged in substantial gainful activity[4] between March 2022 and October 2023.  (*See* Tr. 26-28.)

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[4] The regulations define "substantial gainful activity" as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. The Social Security Administration generally presumes that an individual's past work qualifies as substantial gainful activity

The ALJ found that Tyeisha B. had several severe impairments: "osteoarthritis of the right hip; status post[-]cervical discectomy and fusion in 2012 and implantation of a neurostimulator in 2021; degenerative disc disease in the lumbar spine; and fibromyalgia." (Tr. 28.) According to the ALJ, Tyeisha B. managed her type 2 diabetes, through treatment and weight loss, and it did not cause "more than minimal work-related limitations," so it was non-severe. (*Id.*) Similarly, the ALJ deemed Tyeisha B.'s gastroparesis, gastroesophageal reflux disease, obesity, and non-alcoholic fatty liver disease to be non-severe because they had improved with treatment and did not result in "more than minimal vocationally-related limitations." (Tr. 28-29.) The ALJ also noted that Tyeisha B.'s previous vitamin D deficiency had caused no symptoms. (Tr. 29.) Because her hypertension was well-managed on medication and did not cause end-organ damage or complications, the ALJ found that it was non-severe. (*Id.*) As for Tyeisha B.'s asthma, the ALJ concluded that it was non-severe because it was mild and intermittent, she treated it with occasional inhaler use, and her examinations generally showed normal breathing, clear lungs, and no irregular lung sounds. (*Id.*) Although Tyeisha B. reported neuropathy in her upper extremities, the ALJ found the condition was non-severe after evaluating records from Tyeisha B.'s examinations, her occasional denials of numbness and neurological symptoms, and her ability to perform activities of daily life. (Tr. 29-30.) Lastly, considering Tyeisha B.'s depressive and anxiety disorder diagnoses singly and in

---

if the individual has earnings above a level set out in the regulations. *See* 20 C.F.R. §§ 404.1574, 404.1575.

combination, the ALJ determined that they were non-severe because they caused no more than mild or minimal limitations in her ability to do basic work activities or in any of the mental functioning areas set out in the disability regulations.  (Tr. 30-31 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).)

Next, the ALJ determined that Tyeisha B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*See* Tr. 31-32 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ specifically considered listings 1.15, "Disorders of the skeletal spine resulting in compromise of a nerve root(s)," and § 1.18, "Abnormality of a major joint(s) in any extremity." (*Id.*)

The ALJ concluded that Tyeisha B. had the residual functional capacity[5] to perform a full range of sedentary work during the relevant period.[6]  (Tr. 33.)  He explained that he rendered the RFC determination after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

---

[5] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of their impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

[6] *See* 20 C.F.R. § 404.1567 (setting forth "physical exertion requirements of work in the national economy"). Sedentary work "involves sitting" with occasional walking and standing, "lifting no more than 10 pounds at a time," and "occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 404.1567(a).

4

medical evidence and other evidence" as well as "the medical opinion(s) and prior administrative medical finding(s)." (*See* Tr. 33-38.)

Based on a detailed earnings query and Tyeisha B.'s testimony that she worked as a special assistant for Philadelphia City Council from February 2008 to January 2011, the ALJ determined that this position was past relevant work. (Tr. 38.) Relying on the VE's testimony, the ALJ found that the position corresponded to that of a clerk typist and that Tyeisha B. had performed the job at sedentary exertion. (Tr. 38-39.) Accordingly, the ALJ concluded that Tyeisha B. could perform past relevant work and was not disabled under the Social Security Act from the alleged onset date to the date of his decision.[7] (Tr. 39.)

After the Appeals Council denied Tyeisha B.'s request for review (Tr. 12-14), she filed this action seeking review of the Commissioner's final decision. (ECF 1.)

## II.    LEGAL STANDARDS[8]

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). The Commissioner considers whether the claimant: (1) is engaged in substantial gainful

---

[7] The ALJ noted that even if Tyeisha B. "did not perform past work at the sedentary exertional level, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.21 or 201.22." (Tr. 39.) *See* Program Operations Manual System § DI 25025.035.

[8] The respective regulations governing claims for DIB, which can be found at 20 C.F.R. Part 404, and claims for Supplemental Security Income, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment; (4) has the capacity to do past relevant work, considering the claimant's RFC; and (5) is able to do any other work, considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a). The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant *always* bears the burden . . . by a preponderance of the evidence . . . .") (emphasis added).

The limited question before the Court on review of the Commissioner's final determination is not whether Tyeisha B. was disabled. Rather, the Court must determine whether "substantial evidence" supports the Commissioner's finding that she was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[9] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[9] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

(1988) (citation modified). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). In other words, this Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611. The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also* 42 U.S.C. § 405(b)(1) (requiring an ALJ to state the "reason or reasons upon which [a denial of benefits] is based"). To decide whether the record was sufficiently developed, the Court reads the ALJ's decision "as a whole." *Jones*, 364 F.3d at 505.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing" the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Tyeisha B. bears the burden to explain how any "error to which [s]he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (applying this standard to social security adjudications). Remand is not required if it would not affect the outcome of the case. *See Rutherford*, 399 F.3d at 553.

## III.    DISCUSSION

### A.    The ALJ Properly Evaluated Tyeisha B.'s Fibromyalgia at Step Three.

Tyeisha B. argues that the ALJ erred at step three by failing "to properly follow SSR 12-2[p]" and consider whether her fibromyalgia medically equaled listed impairment 14.09(D), "Inflammatory arthritis." (ECF 9 at 14-18.) She contends that this alleged error is not harmless "since the evidence could reasonably equal" the listing. (*Id.* at 17.) She also asserts that the ALJ's findings are "conclusory" and "prevent this Court from determining whether his decision was supported by substantial evidence." (*Id.*) The Commissioner replies that the ALJ was not required to specifically consider listing § 14.09(D) at step three. (*See* ECF 10 at 9-10.) The Commissioner argues that the ALJ's analysis was sufficient to show that he considered the record evidence as it relates to the listing requirements and that Tyeisha B. has not met her burden to show that she meets or equals all of listing § 14.09(D)'s criteria. (*See* ECF 10 at 8-12.) Considering the parties' respective arguments and upon review, the ALJ's "development of the record and explanation of his findings in the decision as a whole permits meaningful review of his step-three conclusion." *Remaley v. Saul*, No. 19-1493, 2021 WL 1224519, at *5 (W.D. Pa. Mar. 31, 2021) (citation modified) (citing *Jones*, 364 F.3d at 505). Substantial evidence— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—supports the ALJ's determination that Tyeisha B.'s fibromyalgia and other impairments did not meet or medically equal a listed impairment. *Pierce*, 487 U.S. at 565.

Social Security Ruling 12-2p provides guidance on how ALJs should evaluate fibromyalgia in disability claims. *See* SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).

Fibromyalgia is a "common" but "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least" three months. *Id.* at *2. In addition to "tender points on the neck, shoulders, back, hips, arms or legs that hurt when touched," fibromyalgia can cause constitutional symptoms such as "fatigue, difficulty sleeping, morning stiffness, headaches, and problems with cognition or memory." *Henderson v. Astrue*, 887 F. Supp. 2d 617, 621 n.9 (W.D. Pa. 2012) (citation modified). Fibromyalgia can "interfere with a person's ability to carry out daily activities" and "is often considered an arthritis-like condition." *Friedman v. Berryhill*, No. 18-9446, 2019 WL 1418132, at *10 (D.N.J. Mar. 29, 2019) (citation modified); *see also Garda v. Comm'r of Soc. Sec.*, No. 20-6525, 2022 WL 143169, at *10 (D.N.J. Jan. 17, 2022) ("[F]ibromyalgia is considered a type of arthritis.").

An ALJ's step three analysis must address "whether and why [the claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). Fibromyalgia is not a listed impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, once an ALJ finds that a claimant's fibromyalgia is an impairment at step two, agency policy directs the ALJ to determine at step three whether fibromyalgia alone or in combination with at least one other medically determinable impairment medically equals a listed impairment. *See* SSR 12-2p, 2012 WL 3104869, at *5-6. SSR 12-2p provides listing 14.09(D), "Inflammatory arthritis," as an "example" for ALJs to consider. *Id.* at *6. Contrary to Tyeisha B.'s assertions, "SSR 12-2[p] does not mandate an ALJ to consider fibromyalgia as medically equal to inflammatory arthritis; it merely

*suggests* the listing as one example against which fibromyalgia may be considered." *Browner v. Berryhill*, No. 16-6237, 2018 WL 3031516, at \*7 (E.D. Pa. June 19, 2018).

The ALJ might have erred if he failed to analyze Tyeisha B.'s fibromyalgia symptoms against any relevant listing. *Cf. Kozla v. Colvin*, No. 16-631, 2017 WL 4269963, at \*11 (D.N.J. Sept. 26, 2017) (remanding where the ALJ "failed to mention any specific listed impairments that could possibly relate to fibromyalgia"). However, he considered § 1.18, which addresses abnormality of a major joint in any extremity and lists "chronic joint pain or stiffness" as a criterion. (Tr. 32.) *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.18. His analysis is sufficient to withstand scrutiny, particularly since he considered Tyeisha B.'s fibromyalgia symptoms throughout his decision, including factoring in her fatigue when crafting her RFC. (*See* Tr. 36.)

The ALJ did not have to explicitly examine listing § 14.09(D) at step three because he implicitly determined that Tyeisha B. had not shown that her impairments medically equaled its criteria. (*See* Tr. 31-38.) Listing § 14.09(D) requires evidence of (1) "repeated manifestations of inflammatory arthritis," (2) "with *at least two* of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)," and (3) "one of the following *at the marked level*: (a) limitation of activities of daily living, (b) limitation in maintaining social functioning, or (c) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.09(D) (emphasis added) (citation modified). The regulations define "malaise" as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.*

§ 14.00(C)(2). They define "severe fatigue" as a "frequent sense of exhaustion that results in significantly reduced physical activity or mental function." *Id.* Additionally, a "marked limitation" "means that the signs and symptoms of an immune system disorder interfere seriously with a person's ability to function." *Garda*, 2022 WL 143169, at *10; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.00(I)(4)-(5) ("Although we do not require the use of . . . a scale, 'marked' would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. . . . [A claimant] need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with [their] ability to function independently, appropriately, and effectively.").

Tyeisha B. argues that she met her burden to show that her impairments medically equaled listing § 14.09(D) by pointing to her full-body pain, her history of medication and physical therapy to treat fibromyalgia, and examinations "showing 18 of 18 positive trigger points." (ECF 9 at 17 (citing Tr. 1387).) She also contends that she suffered from extreme fatigue and that her fibromyalgia affected "her interactions with other people" and resulted in her "performing few activities of daily living." (*Id.* (citing Tr. 828).)

Whether Tyeisha B. suffers from fibromyalgia is not at issue. The ALJ determined at step two that she did and that it was a severe impairment. (Tr. 28.) Nevertheless, presuming that this condition medically equals "repeated manifestations of inflammatory arthritis," Tyeisha B. has not carried her burden to establish the listing's other requirements. Starting with the constitutional symptoms criterion, the ALJ accepted Tyeisha B.'s complaint of fatigue and factored it into her RFC. (*See* Tr. 36.)   Yet his

decision did not find her fatigue severe, or "result[ing] in significantly reduced physical activity or mental function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.00(C)(2). Rather, the ALJ concluded that Tyeisha B. only had "mild" limitations in her mental functioning (Tr. 30-31) and included no mental limitations in her RFC. (Tr. 35.) Further, his determination that Tyeisha B.'s fatigue did not preclude her from doing sedentary work or many activities of daily life contradicts any finding that she had significantly reduced physical activity. (*See* Tr. 33-38.)

Substantial evidence supports the ALJ's conclusions. A vast majority of the medical records show that Tyeisha B. reported no fatigue. (*Compare* Tr. 307, 321, 329, 335, 345, 352, 360, 367, 402, 1533, 1556, 1584, 1647, 1719, 1766, 1835, 1874, 1912 (reporting no fatigue), *with* Tr. 349, 1373 (complaining of fatigue).) While she testified that she had to lie down twenty-two to twenty-three hours out of the day, she attributed this to pain, not fatigue. (*See* Tr. 60-61.) Regardless, the ALJ found this testimony incredible because it was inconsistent with record evidence showing that Tyeisha B. drove, cooked, shopped, cleaned, read, paid bills, attended religious meetings via Zoom, exercised on an elliptical machine and exercise ball, used resistance bands, and rode a recumbent bike. (*See* Tr. 36, 38 (citing Tr. 247-54 (Ex. 5E), 273-80 (Ex. 10E), 1336 (Ex. 10F at 137), 1385 (Ex. 12F at 3), 1762, (Ex. 17F at 10, 119)).) Additionally, medical evidence showed that Tyeisha B. was "generally in no acute distress." (*Id.* (citing Tr. 839 (Ex. 7F at 6), 1207, 1215, 1222, 1241, 1252, 1261, 1274, 1292, 1303 (Ex. 10F at 8, 16, 23, 42, 53, 62, 75, 93, 123), 1386 (Ex. 12F at 4), 1514 (Ex. 15F at 3), 1766, 1836, 1875, 1912 (Ex. 17F at 14, 84, 123, 160)).) This evidence falls short of establishing that her fatigue was severe. *Cf. Risser v. Astrue*, No. 11-1173, 2012 WL

3682366, at *4 (M.D. Pa. Aug. 24, 2012) (determining that a claimant had shown that her fatigue and malaise were severe where her treating physician's notes supported their seriousness).

Further, even if her fatigue was severe, Tyeisha B. makes no argument that she suffered from fever, involuntary weight loss, or malaise. (*See* ECF 9 at 16-17.) The record would not support such arguments in any event. (*See, e.g.*, Tr. 307, 389, 1835, 1874 (logging no unexpected weight change or fever), 331, 1217, 1871 (noting that she felt "well" or "pretty well").) Tyeisha B. has failed to establish the constitutional symptoms criterion. *See Tolan v. Kijakazi*, No. 20-1675, 2022 WL 905550, at *13 (M.D. Pa. Mar. 28, 2022) (determining that a claimant failed to show that her medical conditions equaled a listed impairment where she "cited no evidence to support her position that she exhibited two constitutional symptoms" (citation modified)); *see also Goodwin v. Astrue*, No. 10-1506, 2011 WL 3844156, at *14 (W.D. Pa. Aug. 30, 2011) (denying claimant's summary judgment motion where he "failed to point to evidence" of constitutional symptoms to satisfy listing § 14.09(D)).

Furthermore, Tyeisha B. has not shown that she had a marked limitation in her social functioning or activities of daily living. For the former, she testified that she did not "have any quality of life" outside of going to doctor visits and occasionally talking to family members on the phone. (Tr. 60-61.) She claimed that she could not manage the pain of traveling to see people because she could only sit for thirty seconds at a time. (*See* Tr. 60.) Nevertheless, the ALJ determined that Tyeisha B. only had a "mild limitation" in

interacting with others caused by her physical symptoms, depression, and anxiety.[10] (*See* Tr. 30-31, 36-38.) He found that her "explanation of 'pain' for these limits [was] not adequate" and that her claims were inconsistent with the overall record. (*See* Tr. 36-38.) Likewise, he determined that her claimed physical limitations were inconsistent with her ability to "perform many activities of daily living." (*See* Tr. 35-38.) Substantial evidence supports these determinations.

Starting with her social capacity, Tyeisha B. reported spending time with others in person and telephonically. (*See, e.g.*, Tr. 251, 277, 825.) A consultative examination showed that she "was cooperative and responsive to all questions posed by [an] examiner" and "had adequate social skills, . . . normal motor behavior, appropriate eye contact, normal speech, no psychosis, positive affect, and 'pretty good' mood." (Tr. 37 (citing Tr. 824 (Ex. 6F at 5)).) Medical records revealed that she "was generally pleasant, conversant, and well-groomed with normal mood and behavior." (*Id.* (citing Tr. 695, 701, 708, 715, 722, 728, 734, 740, 746, 752 (Ex. 4F at 3, 9, 16, 23, 30, 36, 42, 48, 54, 60, 72), 859, 869 (Ex. 8F at 5, 15), 1284 (Ex. 10F at 85), 1585, 1648, 1720 (Ex. 16F at 57, 120, 192), 1836, 1875, 1913).) The ALJ also was persuaded by the opinion of Amanda Anderson, Psy.D., who concluded that Tyeisha B. had only mild limitations in interacting with other people after examining her and considering that her mood had improved with medication. (*See* Tr.

---

[10] Because the ALJ found that Tyeisha B.'s depression and anxiety were medically determinable (Tr. 30-31), he appropriately considered these non-severe impairments in combination with her physical limitations. *See Sibe K. v. Comm'r of Soc. Sec.*, 2024 WL 4319211, at *6 (D.N.J. Sept. 26, 2024).

37-38 (citing Tr. 859, 869, 1277 (Ex. 10F at 78), 1284, 1370-82 (Ex. 11F), 1585, 1720, 1836, 1875, 1913).)

Turning to Tyeisha B.'s pain, medical records showed that she was "generally in no acute distress." (Tr. 36 (citing Tr. 1207, 1215, 1222, 1241, 1252, 1261, 1274, 1292, 1303, 1514, 1766, 1836, 1875, 1912).) Consultative examiners likewise described her "as in no acute distress," and the ALJ reasoned that the examinations "most likely required [her] to sit for more than" thirty seconds at a time. (*Id.* (citing Tr. 839, 1386).) Additionally, the ALJ considered that many of Tyeisha B.'s documented activities of daily living—driving, shopping in person, cooking, cleaning, doing laundry, virtually attending religious meetings, paying bills, and exercising[11]—were inconsistent with her claimed sitting limitations. (Tr. 36 (citing Tr. 247-54, 273-80, 838 (Ex. 7F at 5), 1336, 1385, 1762, 1871).)

Given that the regulations obligated the ALJ to consider the medical evidence, opinion evidence, and Tyeisha B.'s daily activities when determining if she was disabled, *see* 20 CFR § 404.1529(c), the ALJ's discussion of these factors was relevant because it "highlight[ed] the inconsistencies between [her] subjective symptoms and the record as a whole." *See Moon v. Berryhill*, No. 18-323, 2018 WL 7002038, at *12 (M.D. Pa. Dec. 19, 2018). Substantial evidence supports his decision to discredit her subjective complaints. *See Timmons v. Colvin*, 6 F. Supp. 3d 522, 534 (D. Del. 2013) (affirming an ALJ's determination that a claimant was not credible where her testimony that "she was able

---

[11] Further references to Tyeisha B.'s activities of daily living include these actions.

to engage in several activities of daily living" undermined the credibility of her subjective complaints).

Consequently, Tyeisha B. has not shown that her fibromyalgia and other impairments caused a marked limitation on her social functioning or activities of daily living. Because Tyeisha B. has not shown that her fibromyalgia, alone or in combination with her other impairments, medically equaled "*all* of the specified medical criteria" of listing § 14.09(D), she has not carried her burden to establish that the ALJ erred at step three. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). There is no need for remand based on this argument. *See Shinseki*, 556 U.S. at 409.

**B.    Substantial Evidence Supports the ALJ's RFC Determination.**

Tyeisha B. argues that substantial evidence does not support the ALJ's RFC determination because he "cherry-picked evidence" which reinforced his decision. (ECF 9 at 10-11.) She maintains that he "substantially ignored" record evidence establishing neuropathy, including her complaints that she had numbness, tingling, and sensory deficits in her hands and "difficulty holding . . . small objects for a long time." (*Id.* at 11 (citing Tr. 353, 360, 368, 389, 693, 837, 840).) She asserts that Monique Slade, N.P.'s, opinion that she could only occasionally reach bilaterally due to back pain and neuropathy also supported additional RFC limitations. (*Id.* (citing Tr. 844).) The Commissioner counters that substantial evidence supports the ALJ's RFC determination and that the ALJ appropriately discounted Tyeisha B.'s subjective complaints as inconsistent with the record. (*See* ECF 10 at 12-14.) The Commissioner argues that the ALJ did not determine that Tyeisha B. could perform full-time work solely from her

activities of daily living and "properly considered this evidence as one relevant factor in evaluating [her] claim." (*Id.* at 13.) Considering the parties' respective arguments and the record, substantial evidence—again, not necessarily "a large or considerable amount of evidence"—supports the ALJ's decision to discredit Tyeisha B.'s subjective complaints in appropriately formulating her RFC. *Pierce*, 487 U.S. at 565.

That some "evidence in the record supports a finding that Tyeisha B.'s neuropathy caused her physical limitations does not undermine the ALJ's RFC determination so long as the record provides substantial support for his decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation modified); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an ALJ was "entitled to weigh all evidence in making [her] finding," even where there was record evidence "suggesting a contrary conclusion"). Tyeisha B.'s complaints of numbness or tingling in her hands comprise most of the record evidence of neuropathy. (*See* Tr. 236 (Ex. 3E at 2), 353, 360, 368, 389, 693, 837, 1384 (Ex. 12F at 2).) N.P. Slade's September 2022 physical examination also revealed tingling and sensory deficits to fine touch in Tyeisha B.'s fingers bilaterally (Tr. 840), and Tyeisha B. later reported that it was "hard for her to grasp objects in her hands for long periods of time." (Tr. 1384.)[12]

_____

[12] Tyeisha B. faults the ALJ's decision for not citing to more examples in the record indicating that she "was experiencing numbness and tingling in her hands." (ECF 9 at 11.) However, the ALJ did not have to explicitly "mention every piece of evidence in the record" to make his determination. *See Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("We do not expect the ALJ to reference every relevant treatment note in cases with voluminous medical records." (citation modified)). The ALJ cited to N.P. Slade's examination findings and a few examples of Tyeisha B.'s subjective complaints. (*See* Tr. 36.) This was sufficient

However, the ALJ found that other evidence counseled against finding limitations based on neuropathy. (*See* Tr. 29-30, 36-38.) N.P. Slade and Anne M. Greenberg, M.D., observed that Tyeisha B. had intact hand and finger dexterity and "no limitations" with fine motor activity of her hands. (*See* Tr. 840, 1387.) They also noted that Tyeisha B. had good strength in her arms and full grip strength bilaterally. (Tr. 840, 850, 1387.) By March 2023, Dr. Greenberg found that Tyeisha B. had "no sensory deficit to cold or vibration" in her hands. (Tr. 1387.) Tyeisha B. also occasionally denied numbness to providers. (Tr. 1221, 1283, 1340 (Ex. 10F at 22, 84, 141).) By crediting this evidence, the ALJ complied with his "obligation to weigh the medical evidence and make choices between conflicting data." *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (citation modified).

Additionally, although N.P. Slade opined that Tyeisha B. could not perform "postural maneuvers" and could only occasionally use her hands bilaterally due to neuropathy of her hands and back pain, the ALJ found her opinion unpersuasive because it was unsupported and inconsistent with the record. (*See* Tr. 38, 844-45.) Supportability and consistency are the "most important" persuasiveness factors. 20 C.F.R. § 404.1520c(b)(2); *see also Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639-40 (3d Cir. 2024) (stating the regulations only require ALJs to discuss the supportability and consistency factors and explain dispositive reason(s) for their decisions). "[S]upportability relates to the extent to which a medical source has articulated support

---

for his analysis. Additional references to Tyeisha B.'s complaints would have been redundant.

for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 n.1 (W.D. Pa. Dec. 4, 2023).

Addressing supportability, the ALJ noted that N.P. Slade's examination showed that Tyeisha B. had full strength in her upper extremities, full grip strength bilaterally, and intact hand and finger dexterity.  (Tr. 38 (citing Tr. 840, 850).)  Regarding consistency, the ALJ considered that Dr. Greenberg's opinion contained these same findings as well as a determination that Tyeisha B. had no sensory deficit to cold or vibration.  (*Id.* (citing Tr. 1387).)  He also explained that Tyeisha B. "performed activities of daily living that likely involved . . . carrying things . . . [and] postural maneuvers." (*Id.* (citing Tr. 247-54, 273-80, 825 (Ex. 6F at 6), 838, 1374).)  Because the ALJ addressed the supportability and consistency factors by examining the record evidence, he appropriately rejected N.P. Slade's opinion that Tyeisha B. had physical limitations resulting from her neuropathy. *See* 20 C.F.R. § 404.1520c(c)(1)-(2); *Schuster v. Astrue*, 879 F. Supp. 2d 461, 467-68 (E.D. Pa. 2012) (finding that substantial evidence supported an ALJ's rejection of a physician's opinion that the claimant had a marked limitation in ability to interact with coworkers where the opinion was inconsistent with the record evidence).[13]

_____

[13] Tyeisha B. relies on three cases to support her argument that the ALJ impermissibly "cherry-picked" evidence, but they are inapposite. (ECF 9 at 10-11.) Two —one from within the Third Circuit, and one from outside—stand for the proposition that ALJs may not make summary conclusions at step three without identifying listed impairments or explaining their reasoning. *See Burnett*, 220 F.3d at 119-20 (characterizing such "hopelessly inadequate" analysis as "beyond meaningful judicial review"); *accord Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (same). Here, however, the ALJ explained at step four why he discounted Tyeisha B.'s complaints of neuropathy. (*See*

The ALJ also considered that Tyeisha B.'s reported activities of daily living involved "good use of the upper extremities" and noted that she "read[] on a regular basis, which generally involves holding reading material or a tablet or other electronic device." (Tr. 36 (citing Tr. 247-54, 273-80, 838, 1385).) Again, the ALJ complied with the regulations by evaluating Tyeisha B.'s activities of daily living while determining her RFC, and this discussion was appropriate because it highlighted inconsistences between her subjective complaints and the record. *See* 20 CFR § 404.1529(c)(3); *Moon*, 2018 WL 7002038, at *12; *Timmons*, 6 F. Supp. 3d at 534.

Tyeisha B. complains that the ALJ provides "no meaningful analysis" as to why her activities establish that she has no "limitations resulting from neuropathy in her hands" (ECF 9 at 12), but his decision, considered as a whole, permits meaningful judicial review. *See Jones*, 364 F.3d at 505. He repeatedly explained that her regular activities, such as driving a car up to four times a week and shopping in stores weekly (*see, e.g.*, Tr. 276) belied the intensity of her claimed symptoms. (*See* Tr. 35-38.) The ALJ did not determine from this evidence alone that Tyeisha B. could "use her hands for eight hours per [work]day," as she argues. (ECF 9 at 12-13.) Instead, the ALJ appropriately considered

---

Tr. 36.) And the third—also not from the Third Circuit—held that an ALJ erred in finding that a claimant's impairment was not presumptively disabling at step three where the ALJ failed to consider (1) the combined effects of the claimant's impairments, (2) a treating physician's determination that the claimant was fully disabled, and (3) the "overwhelming evidence" of the claimant's mental and physical impairments. *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000). Here, the ALJ specifically considered the combined effects of Tyeisha B.'s impairments. (*See* Tr. 31-32.) Moreover, he did not disregard "overwhelming" evidence of physical limitations resulting from her neuropathy and properly considered and rejected N.P. Slade's opinion. (*See* Tr. 36, 38.)

this evidence as one relevant factor in evaluating her claims. *See Miller v. Comm'r of Soc. Sec.*, No. 20-3642, 2021 WL 3137439, at *3 (3d Cir. July 26, 2021) (holding that an ALJ properly relied on evidence of the claimant's ability to do "minor household activities" where they were not "'sporadic or transitory'" and "appropriately indicative of how her pain affect[ed] her daily activities and ability to work" (quoting *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981))); *see also Irelan v. Barnhart*, 82 F. App'x 66, 73 (3d Cir. Dec. 4, 2003) (holding that an ALJ adequately considered lifestyle evidence, specifically the claimant's "shopping, driving, [and] traveling," in determining the intensity and persistence of her symptoms); 20 CFR § 404.1529(c)(3) (allowing for consideration of such evidence). Even if the Court were to credit Tyeisha B.'s argument that evidence of her daily activities is not inconsistent with her subjective complaints, the ALJ's consideration of the countervailing medical evidence satisfies the substantial evidence standard. *See Booker v. Colvin*, No. 14-4984, 2017 WL 914911, at *11 n.18 (E.D. Pa. Mar. 7, 2017).

Tyeisha B. has not met her burden to show that the ALJ erred by concluding that her complaints about the intensity, persistence, and limiting effects of her neuropathy were not entirely consistent with the record. *See Chandler*, 667 F.3d at 363. As substantial evidence supports the ALJ's RFC determination, remand is not required based on this argument either. *See Rutherford*, 399 F.3d at 553.

## IV.    CONCLUSION

Upon review of the record, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's determinations that Tyeisha B.'s impairments did not meet or medically equal a listed impairment and

that the neuropathy in her upper extremities did not warrant additional limitations in her RFC. Substantial evidence is a "low threshold." *Zaborowski*, 115 F.4th at 640. Because Tyeisha B. has not shown that her complaints about the ALJ's consideration of the record evidence would have changed the outcome of his case under the governing regulations, remand is not required to further consider it. *See Shinseki*, 556 U.S. at 409. Therefore, Tyeisha B.'s request for reversal and remand is **DENIED**. The Commissioner's final decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.